# 24-0725-cv(L), 24-0728-cv(CON)

# United States Court of Appeals

*for the*

# Second Circuit

———————————◆———————————

A. H., by her next friend E.H., R. D., by her next friend M.D., J. D., by his next friend D.D., H. L., on behalf of themselves and all others similarly situated, A. B., on behalf of themselves and all others similarly situated, J. S., on behalf of themselves and all others similarly situated, J. C. M., on behalf of themselves and all others similarly situated, L. P., by her next friend C.P., DISABILITY RIGHTS NEW YORK,

*Plaintiffs-Appellants,*

*(For Continuation of Caption See Inside Cover)*

————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT
## DISABILITY RIGHTS NEW YORK

JENNIFER J. MONTHIE, ESQ.
JULIE KEEGAN, ESQ.
BEN TAYLOR, ESQ.
DISABILITY RIGHTS NEW YORK
*Attorneys for Plaintiff-Appellant Disability
Rights New York*
25 Chapel Street, Suite 1005
Brooklyn, New York 11201
(929) 441-4328

CP COUNSEL PRESS        (800) 4-APPEAL • (513547)

T. C., by his next friend D.S., M. L., on behalf of
themselves and all others similarly situated,

*Plaintiffs,*

E. B., M. W., by his next friend T.D., J. D. C., J. P. S., by his next friend S.S.,
M. F., O. A., M. Y., by his next friend B.L., C. H.,

*Intervenor-Plaintiffs-Appellants,*

– v. –

NEW YORK STATE DEPARTMENT OF HEALTH, MARY T. BASSETT,
in her official capacity as Commissioner of the New York State Department of
Health, NEW YORK STATE OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES, KERRI NEIFELD, in her official capacity as Commissioner of
the New York State Office for People with Development Disabilities,

*Defendants-Appellees.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................1

JURISDICTIONAL STATEMENT .........................................................3

STATEMENT OF THE ISSUE PRESENTED ........................................4

STATEMENT OF THE CASE................................................................4

SUMMARY OF THE ARGUMENT .....................................................7

STANDARD OF REVIEW ....................................................................7

ARGUMENT ........................................................................................8

   I. CONGRESS CAN AUTHORIZE REPRESENTATIONAL STANDING.......8

   II. CONGRESS BESTOWED STANDING ON THE P&A SYSTEM..............10

     A. The DD Act and Regulations ......................................11

     B. The PAIMI Act and Regulations................................13

   III. DRNY HAS STANDING TO BRING THIS ACTION..............................15

   IV. JUDICIALLY IMPOSED LIMITATIONS DO NOT APPLY WHERE CONGRESS HAS AUTHORIZED STANDING .................................................20

   V. THE DISTRICT COURT'S RELIANCE ON CASES WHERE CONGRESS HAS NOT AUTHORIZED STANDING IS MISPLACED ................................21

CONCLUSION...................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Aetna Cas. & Sur. Co. v. U.S., P.O. Dept.*,
  170 F.2d. 479 (2d Cir. 1948) ..................................................9

*Allen v. Wright*,
  468 U.S. 751 (1984)...........................................................8

*Avon Nursing & Rehab. v. Becerra*,
  995 F.3d 305 (2d Cir. 2021) ................................................8

*Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*,
  810 F.3d 861 (2d Cir. 2015) ..............................................10

*Disability Rights New York v. New York State et al.*,
  2019 WL 2497907, (E.D.N.Y. June 14, 2019)....................22

*Elec. Priv. Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*,
  117 F. Supp. 3d 46 (D.D.C. Aug. 4, 2015)...........................10

*Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*,
  446 U.S. 318 (1980)...........................................................14

*Gladstone Realtors v. Vill. of Bellwood*,
  441 U.S. 91 (1979).......................................................8, 20

*Goldstein v. Coughlin*,
  83 F.R.D. 613 (W.D.N.Y. Sept. 25, 1979) ..............10, 12, 19

*Greathouse v. JHS Sec. Inc.*,
  784 F.3d 105 (2d Cir. 2015) ..............................................11

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)...........................................................21

*HB Gen. Corp. v. Manchester Partners, L.P.*,
  95 F.3d 1185 (3d Cir. 1996) ................................................9

*Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam.
  & Soc. Servs. Admin.*,
  630 F. Supp. 3d 1022 (S.D. Ind. Sept. 26, 2022).........16, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...........................................................18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................16

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ...........................................................8

*Nat'l Motor Freight Traffic Ass'n v. United States*,
  372 U.S. 246 (1963) .........................................................................8

*Naughton v. Bevilacqua*,
  458 F. Supp. 610 (D.R.I. Sept. 18, 1978) .........................................19

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999) .........................................................................17

*Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
  821 F.3d 352 (2d Cir. 2016) ...........................................................18

*Raines v. Byrd*,
  521 U.S. 811 (1997) .........................................................................21

*Rubenstein v. Benedictine Hosp.*,
  790 F. Supp. 396 (N.D.N.Y. 1992) ............................................. 12, 19

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .........................................................................21

*Trautz v. Weisman*,
  846 F. Supp. 1160 (S.D.N.Y. Mar. 16, 1994) ............................... 19, 20

*U.S. ex rel. Kreindler*,
  985 F.2d 1148 (2d Cir. 1993) ............................................. 9, 10, 16, 21

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996) ..................................................................... 8, 14

*United States v. McKeithen*,
  822 F.2d 310 (2d Cir. 1987) ...........................................................10

*Virginia Off. for Prot. & Advoc. v. Stewart*,
  563 U.S. 247 (2011) ..................................................................... 17, 18

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................. 9, 17, 20

**Statutes and Other Authorities:**

U.S. Const., amend. XIV .................................................................... 4, 17

15 U.S.C. § 15c ..................................................................................15

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 1331 ..................................................................................3

28 U.S.C. § 1343 ..................................................................................3

29 U.S.C. § 201 ..................................................................................14

29 U.S.C. § 216(c) ............................................................................14

29 U.S.C. § 794e ..................................................................................5

29 U.S.C. § 1132(a)(2) ......................................................................15

42 U.S.C. § 1983 ....................................................................... 3, 5, 18

42 U.S.C. § 2000e-4(g)(6) ................................................................15

42 U.S.C. § 2000e-5(f)(1) ................................................................14

42 U.S.C. § 3616a(a)(1) ....................................................................14

42 U.S.C. § 6000 ..................................................................................1

42 U.S.C. § 10801 ................................................................................4

42 U.S.C. § 10801(a) ........................................................................12

42 U.S.C. § 10801(b)(2)(A) ....................................................... 2, 11

42 U.S.C. § 10805(a)(1)(B) ....................................................... passim

42 U.S.C. § 10805(a)(1)(C) ....................................................... 13, 18, 20

42 U.S.C. § 15001 ................................................................................1

42 U.S.C. § 15041 ................................................................................4

42 U.S.C. § 15043(a)(1) ............................................................. 2, 11

42 U.S.C. § 15043(a)(2)(A)(i) .................................................. 2, 11, 17

42 U.S.C. § 15044(b) .................................................................. 11, 18

42 C.F.R. § 51.6(f) ........................................................................2, 14

45 C.F.R. § 1326.21(c)......................................................................12

45 C.F.R. § 1326.24 ................................................................11

132 Cong. Rec. H2642-02 ......................................................13

145 Cong. Rec. S14313-04 ....................................................13

146 Cong. Rec. H9787-02 ......................................................13

Fed. R. Civ. P. 12(b)(1)............................................................5

Fed. R. Civ. P. 17 ....................................................................9

Fed. R. Civ. P. 17(a)..............................................................10

Fed. R. Civ. P. 17(a)(1)(G) .....................................................9

Fed. R. Civ. P. 23 ..................................................................20

N.Y. Exec. Law § 558(b) .....................................................2, 4

S. REP. 103-120 (1993), *reprinted in* 1994 U.S.C.C.A.N. 164 .............................12

## PRELIMINARY STATEMENT

Disability Rights New York ("DRNY") is an agency specifically authorized by Congress to bring lawsuits in its own name on behalf of people with disabilities. Despite its clear congressional authorization to prosecute actions like this one, the district court erroneously held that DRNY lacks standing to assert claims in this action. The cases relied upon by the district court below are inapposite because in those cases the plaintiffs had no such congressional authorization. Congress empowered DRNY to vindicate the rights of individuals with disabilities.

In 1972, Geraldo Rivera exposed the horrific conditions of abuse and neglect at the Willowbrook State School in Staten Island. Willowbrook was an institution that was supposed to provide care and treatment to children and adults with intellectual and developmental disabilities. The reporting exposed unconscionable treatment of Willowbrook residents in the form of beatings, inappropriate use of restraints, untreated wounds, and involuntary medical experimentation. In response to this abuse and neglect and in recognition that the individuals had no practical means of seeking redress, Congress passed the Developmental Disabilities Assistance and Bill of Rights Act of 1975 (DD Act), 42 U.S.C. § 6000 et seq. (repealed and replaced by 42 U.S.C. § 15001 et seq.). Under the DD Act, a state that accepts federal financial assistance for services for individuals with developmental disabilities is required to have "a system to protect and advocate the rights of

individuals with developmental disabilities." 42 U.S.C. § 15043(a)(1). Protection and Advocacy ("P&A") Systems were created to, among other things, pursue legal remedies "to ensure the protection of, and advocacy for, the rights of such individuals." 42 U.S.C. § 15043(a)(2)(A)(i).

In 1985 Congress enacted the Protection and Advocacy System for Individuals with Mental Illness ("PAIMI") Act to protect and enforce the rights of individuals with mental illness. Like the DD Act, the PAIMI Act empowers P&A systems to "pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness" and "the enforcement of the Constitution and Federal and State statutes." 42 U.S.C. § 10805(a)(1)(B), 10801(b)(2)(A). The federal regulations implementing PAIMI provide that a P&A system may "bring lawsuits in its own right to redress incidents of abuse or neglect, discrimination, and other rights violations." 42 C.F.R. § 51.6(f).

DRNY is a not-for-profit corporation designated as New York State's P&A System and Client Assistance Program on June 1, 2013. N.Y. Exec. Law § 558 (b) (McKinney). As the P&A for the State of New York, DRNY is the recipient of eight federal grants that require DRNY to protect and advance the rights of individuals with disabilities. Pursuant to this mandate, DRNY investigates allegations of abuse and neglect and engages in individual and systemic litigation on behalf of persons with disabilities.

2

# **JURISDICTIONAL STATEMENT**

Plaintiff-Appellant DRNY brought this action against Defendant-Appellees New York State Department of Health ("DOH"), New York State Office for People with Developmental Disabilities ("OPWDD"), and their respective commissioners, Mary Bassett and Kerri Neifeld, seeking injunctive and declaratory relief, as well as an award of attorneys' fees, for rights violations of persons with disabilities in violation of the Medicaid Act, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the United States Constitution. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, 1343, as well as 42 U.S.C. § 1983.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 as of right from a final order of the district court dismissing DRNY's claims. (SPA 1).[1] DRNY timely filed a notice of appeal on March 18, 2024, less than thirty (30) days after the February 20, 2024, date of the decision appealed from, and files this memorandum of law in support of its appeal in accordance with this Court's expedited scheduling order of April 4, 2024.

---

[1] References to the Special Joint Appendix are to "SPA-_." References to the Joint Appendix are to "JA-_."

3

## STATEMENT OF THE ISSUE PRESENTED

Whether the district court committed reversible error by dismissing DRNY's claims for lack of standing despite DRNY's congressional mandate to seek legal remedies in its own right on behalf of individuals with disabilities.

## STATEMENT OF THE CASE

This case was filed on June 16, 2022, by eight individual named plaintiffs and DRNY seeking injunctive and declaratory relief on behalf of "Individuals with disabilities who have been, or will be, determined by OPWDD to be eligible for HCBS Waiver services and certified residential opportunities, but remain institutionalized due to Defendants' failure to deliver these services." (JA 22, 62). Plaintiffs alleged the failure to provide community-based residences and services resulted in their indefinite institutionalization, in violation of the Medicaid Act, the Rehabilitation Act, and the ADA. (JA 24). Plaintiffs filed an amended complaint on October 14, 2022, to remove two named plaintiffs and add two others and to further allege violations of the 14th Amendment to the United States Constitution. (JA 74, 77).

As it pertains to this appeal, in the amended complaint DRNY alleged:

*DRNY is a Protection and Advocacy system, as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15041 et seq., the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. § 10801 et seq., and the*

4

*Protection and Advocacy of Individual Rights Act, 29 U.S.C. § 794e et seq. As New York State's Protection & Advocacy system, DRNY is specifically authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with disabilities.*

(JA 79).

On December 1, 2022, Defendants filed a partial motion to dismiss. (JA 187). Through this motion, Defendant moved the court to dismiss DRNY for lack of standing. (*Id.*). Additionally, the motion sought dismissal of Plaintiffs' 14th Amendment Due Process claims, and one of Plaintiffs' three Medicaid Act claims. Defendants did not move to dismiss two other Medicaid Act claims or Plaintiffs' claims under the ADA or the Rehabilitation Act. (*Id.*). Defendants also argued that all claims should be dismissed as to Defendants OPWDD and DOH, and that Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed as to Defendant Bassett. (*Id.*).

On July 5, 2023, while the motion to dismiss was still pending, eight additional institutionalized individuals moved the court to intervene as named plaintiffs in the action. (JA 323).

On January 24, 2024, while both the motion to dismiss and motion to intervene were still pending, Defendants filed a letter with the court requesting a pre-motion conference "in anticipation of Defendants' proposed Fed. R. Civ. P. 12(b)(1) motion to dismiss the Amended Complaint". (JA 441). In that letter Defendants suggested

the claims of all named plaintiffs from the amended complaint were moot and reiterated the argument that DRNY lacked standing. (*Id.*). As a result, they argued, the court lacked subject matter jurisdiction to proceed. (*Id.*). Plaintiffs submitted a response letter on January 29, 2024, which stated, among other things, that DRNY and the named plaintiffs had standing, the case was not moot, and Defendants' request for a pre-motion conference should be denied. (JA 444).

On February 20, 2024, without any hearing or full briefing on the issues raised in Defendants' letter requesting a pre-motion conference, the district court issued a decision and order dismissing the action in its entirety. (SPA 1). The only issue from Defendants' actual motion to dismiss that the district court decided was that DRNY lacked standing to pursue claims on behalf of individuals with disabilities in New York based on the erroneous position that "in this Circuit, there is a bar on such third-party standing." (SPA 14). The remainder of the case was dismissed based on the district court's determination to convert Defendants' request for a conference into a motion to dismiss, and to grant that motion without providing Plaintiffs any opportunity to be heard. (SPA 21)[2]

---

[2] It is noteworthy that the district court's decision went far beyond what Defendants sought in their fully briefed motion to dismiss. That motion, if granted in full, would still have left standing Plaintiffs ADA and Rehabilitation Act claims against Commissioners Neifeld and Bassett as well as two Medicaid Act claims against Commissioner Neifeld.

This appeal addresses only the district court's determination to dismiss DRNY for lack of standing. The other Plaintiffs have appealed separately under case number 24-725 and DRNY also joins that appeal.

## SUMMARY OF THE ARGUMENT

Pursuant to the DD and PAIMI Acts, DRNY has representational standing to bring suit in its own name on behalf of individuals with disabilities who have suffered rights violations, abuse, or neglect. DRNY is authorized by Congress to seek appropriate remedies on behalf of individuals with intellectual and developmental disabilities who have been injured by unnecessary institutionalization due to Defendants' failure to deliver appropriate community-based services. Because Congress explicitly vested P&As with the authority to "stand in the shoes" of individuals with disabilities, DRNY satisfies the requirements for Article III standing. Additionally, the general prohibition on a litigant raising another person's legal rights does not apply here because Congress has deliberately authorized P&As to prosecute such actions on behalf of individuals with disabilities.

## STANDARD OF REVIEW

On appeal from a district court's dismissal of a case for lack of subject matter jurisdiction, Courts of Appeals review factual findings for clear error and legal

conclusions de novo. *Avon Nursing & Rehab. v. Becerra*, 995 F.3d 305, 310–11 (2d Cir. 2021) *citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## **ARGUMENT**

## I.   **CONGRESS CAN AUTHORIZE REPRESENTATIONAL STANDING**

The Supreme Court has unequivocally held that representational standing can exist based on particular relationships authorized by Congress.

> [W]e recognized in *Allen v. Wright,* 468 U.S. at 751, 104 S.Ct., at 3324, that "the general prohibition on a litigant's raising another person's legal rights" is a "judicially self-imposed limi[t] on the exercise of federal jurisdiction," not a constitutional mandate. Indeed, the entire doctrine of "representational standing," … rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition or by statutes) are sufficient to rebut the background presumption (in the statutory context, about Congress's intent) that litigants may not assert the rights of absent third parties.

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996).

"Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by" those asserting the legal interests of third parties rather than their own. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979); *See also Nat'l Motor Freight Traffic Ass'n v. United States*, 372 U.S. 246 (1963) (appellants had standing where statute authorized representation of members who were aggrieved by the contested order).

This principle has been adopted by this Court, which has held "Congress . . . may create a legal interest and confer standing to assert it. 'The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.''" *U.S. ex rel. Kreindler*, 985 F.2d 1148, 1153 (2d Cir. 1993), *citing Warth v. Seldin*, 422 U.S. 490, 500 (1975). *Kreindler* is particularly instructive because those plaintiffs were *qui tam* relators who alleged no injury to themselves, yet this Court determined that as a result of congressional action they had Article III standing to proceed. *Id.* As such, this Court has already held that Congress, through statute, may dictate which entity or person may enforce the actual or threatened injury in fact of a third party.

Even the Federal Rules of Civil Procedure recognize that Congress can designate third parties as the "real party in interest." Fed. R. Civ. P. 17(a)(1)(G). Specifically, in addition to executors, guardians, and trustees, "*a party authorized by statute*" may "*sue in their own name*". *Id.* (emphasis added). This Court and others have consistently recognized this rule. *See Aetna Cas. & Sur. Co. v. U.S., P.O. Dept.*, 170 F.2d. 479, 472 (2nd Cir. 1948) ("To the extent the plaintiff must turn over its recovery to another, it is a 'party authorized by statute' to sue in its own name, expressly designated the 'real party in interest' by Federal Rules of Civil Procedure, rule 17…"); *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1197 (3d Cir. 1996) ("insofar as [plaintiffs] are authorized to bring suit under Delaware law—

even derivatively or otherwise on behalf of the Partnership—they are also real parties in interest.").

When a party becomes the "real party in interest" the standing inquiry as to injury and redressability must be focused on "the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a). Accordingly, when authorized by statute a party need not show injury to itself in order to have standing. *U.S. ex rel. Kreindler & Kreindler*, 985 F.2d at 1153; *See also Goldstein v. Coughlin*, 83 F.R.D. 613, 614 (W.D.N.Y. Sept. 25, 1979).

## II.   CONGRESS BESTOWED STANDING ON THE P&A SYSTEM

Congress has unequivocally bestowed representational standing upon the P&A System under the plain language of the governing statutes and regulations. Interpretation of a statute necessarily begins with its plain language "giving all undefined terms their ordinary meaning while attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Elec. Priv. Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 54 (D.D.C. Aug. 4, 2015) *citing Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015). Common sense is "essential to the endeavor, for literal applications that lead to absurd results must be avoided." *United States v. McKeithen*, 822 F.2d 310, 315 (2d Cir. 1987). If a provision within a statute is ambiguous, interpretation should then turn to "canons of statutory construction for

assistance in interpreting the statute." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015). "These include looking to the purpose of [a statute], and affording some degree of weight to the interpretations of the agencies charged with enforcing it." *Id.* at 113.

The DD and PAIMI Acts authorize the P&A system to pursue legal, administrative, and other appropriate remedies to ensure the protection of people with disabilities. 42 U.S.C. § 15043(a)(1), (a)(2)(A)(i); 42 U.S.C. § 10805(a)(1)(B), 10801(b)(2)(A).

## A. The DD Act and Regulations

The DD Act provides that, "[n]othing in this subchapter shall preclude a system from bringing a suit on behalf of individuals with developmental disabilities against a State, or an agency or instrumentality of a State." 42 U.S.C. § 15044(b).

The regulations implementing the DD Act allow for costs incurred by a P&A to be recovered "in bringing lawsuits in *its own right* to redress incidents of abuse or neglect, discrimination and other rights violations" on behalf of individuals with developmental disabilities. 45 C.F.R. § 1326.24 (emphasis added). The Department of Health and Human Services promulgated regulations which further provide that the "P&A shall not implement a policy or practice restricting the remedies that may be sought on behalf of individuals with developmental disabilities or compromising

11

the authority of the P&A to pursue such remedies through litigation, legal action or other forms of advocacy." 45 C.F.R. § 1326.21(c).

Indeed, when the DD Act was amended in 1994, Congress reviewed the statute's authorization and re-affirmed the P&A's representational standing authority:

> The Committee heard testimony about the *waste of scarce resources that are expended on litigating the issue of whether P&A systems have standing to bring suit.* The Committee *wishes to make it clear that we have reviewed this issue and have decided that no statutory fix is necessary because the current statute is clear that P&A systems have standing to pursue legal remedies* to ensure the protection of and advocacy for the rights of individuals with developmental disabilities within the State. The Committee has reviewed and concurs with the holdings and rationale in *Goldstein v. Coughlin*, 83 F.R.D. 613 (W.D.N.Y. 1979) and *Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396 (N.D.N.Y. 1992).

S. REP. 103-120, 39 (1993), *reprinted in* 1994 U.S.C.C.A.N. 164, 202-03 (emphasis added).

This commentary must also be read in conjunction with the legislative purpose. Congress enacted the P&A statutes, finding that "individuals with [disabilities] are vulnerable to abuse and serious injury" as well as neglect, and that "[s]tate systems for monitoring compliance with respect to the rights of individuals with [disabilities] ... are frequently inadequate." 42 U.S.C. § 10801(a). Congress therefore created the P&A System to remedy this problem; giving a voice to people

12

with disabilities as they navigate state-operated systems and discriminatory policies. 146 Cong. Rec. H9787-02.

Congress created the P&A system as an independent state-level agency with the duty of enforcing the legal rights of persons with disabilities. Congressional appropriations for the P&A system are designed to provide P&A agencies with adequate resources for legal advocacy. *See* 145 Cong. Rec. S14313-04. As such, any interpretation of the P&A statute against its authority to bring suit in its own right on behalf of people with disabilities would render the powers Congress vested to it meaningless.

## B. The PAIMI Act and Regulations

The PAIMI Act provides that the P&A shall have the authority to "pursue administrative, legal, and other remedies to ensure the protection of individuals with mental illness." 42 U.S.C. § 10805(a)(1)(B); *See also* 132 Cong. Rec. H2642-02 (daily ed. May 13, 1986) (statement of Rep. Waxman) (discussing the language of what is now 42 U.S.C. § 10805(a)(1)(B) and stating that "[i]t is also clear that the conferees do not intend for questions of standing or jurisdiction to limit the effectiveness, range, or forums in which P&A agencies can work").

The PAIMI Act also provides that the P&A shall have the authority to "pursue administrative, legal, and other remedies on behalf of an individual." 42 U.S.C. § 10805(a)(1)(C). The plain reading of subsections (B) and (C) above illustrates that

Congress intended to empower the P&A system with the authority to maintain actions in its own name, as well as the authority to provide traditional individual representation.

The regulations implementing the PAIMI Act permit allotments to be used to pay "allowable costs incurred by a P&A system in bringing lawsuits in *its own right* to redress incidents of abuse or neglect, discrimination, or other rights violations impacting on individuals with mental illness." 42 C.F.R. § 51.6(f) (emphasis added).

The P&A Acts are not the only example of Congress authorizing by statute a real party in interest without running afoul of Article III. There are a "variety of other contexts in which a statute… permits one person to sue on behalf of another." *United Food and Commercial Workers Union Local 751*, 517 U.S. at 557. For example, § 706(f)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), expressly authorizes the Equal Employment Opportunity Commission to sue for back-pay on behalf of employees who are victims of employment discrimination. *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318 (1980). The Fair Labor Standards Act of 1938, 29 U.S.C. § 201, 216(c), contains a comparable provision permitting the Secretary of Labor to sue for the recovery of unpaid minimum wages and overtime compensation; 42 U.S.C. § 2000e-5(f)(1) authorizes the Attorney General to initiate civil actions against private employers under Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 3616a(a)(1) authorizes

fair housing organizations to enforce the rights granted by the Fair Housing Act through such appropriate judicial or administrative proceedings; 42 U.S.C. § 2000e-4(g)(6) authorizes the EEOC to intervene in civil actions brought by individual aggrieved parties; 29 U.S.C. § 1132(a)(2) grants the Secretary power to initiate various civil actions under the Employee Retirement Income Security Act; and 15 U.S.C. § 15c authorizes state attorneys general to bring a federal action on behalf of the state's citizens under federal antitrust laws. In none of these examples has the Supreme Court upheld additional prudential burden on the party exercising standing through these statutes. It is therefore well settled that when Congress by statute identifies a litigant who may demonstrate the injury in fact of another, no other showing is necessary to satisfy Article III.

Congress (and those federal agencies responsible for implementing the P&A Acts) envisioned a system in which P&A agencies exercise broad discretion about what type of legal action to take and how best to achieve specific advocacy goals. The P&A authorizing statutes, regulatory language and congressional commentary plainly grant the necessary discretion to the P&A system to craft legal strategies to most effectively advocate for people with disabilities.

## III.    DRNY HAS STANDING TO BRING THIS ACTION

Congress has specifically authorized DRNY, as the P&A in New York, to bring this type of action on behalf of all people with intellectual and developmental

15

disabilities who have been injured by unnecessary institutionalization due to Defendants' failure to deliver appropriate community-based services. This is the essence of congressionally authorized representational standing.

To establish Article III standing, a plaintiff must allege: (1) a concrete and particularized, actual or imminent injury in fact; (2) a causal connection between Defendants' conduct to the alleged injury; and (3) a likelihood that a favorable decision would redress said alleged injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The requirements of justiciability and controversy are met when a party alleges a colorable claim of injury suffered, or likely to be suffered. *Id.* A congressionally authorized representative alleging the claim of injury on behalf of a complainant need not allege injury to itself to satisfy Art. III. *U.S. ex rel. Kreindler & Kreindler*, 985 F.2d at 1153. *See also Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam. & Soc. Servs. Admin.*, 630 F. Supp. 3d 1022, 1030 (S.D. Ind. Sept. 26, 2022), ("[S]tatutory grant of standing to [P&A system] does not run afoul of the constitutional minimum 'allegation[ ] of injury' where, as here, [P&A system] steps into the shoes of its injured constituents.")

In the amended complaint, DRNY alleged that people with intellectual and developmental disabilities remain confined in institutional settings such as hospitals, nursing homes, and intermediate care facilities, despite being ready, willing, and able to reside in community-based settings. (A 75). DRNY has alleged that

16

Defendants are charged with administering programs that people with intellectual and developmental disabilities need to access community-based services. (*Id.*). DRNY has alleged the failure of Defendants to provide community-based residences and services resulted in their indefinite institutionalization, in violation of the Medicaid Act, the Rehabilitation Act, the ADA, and the 14th Amendment to the United States Constitution. (*Id.*). There is no question that unjustified institutionalization constitutes injury in fact. See, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Nor is there any doubt that the injury alleged is the result of Defendants' conduct, which would be redressed by a favorable decision. No more is required to be alleged at this stage of the case. *Warth,* 422 U.S. at 501 ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.").

The Supreme Court and other federal district courts have held P&As have standing to pursue litigation on behalf of individuals with disabilities. In *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011), the Supreme Court reiterated that the DD and PAIMI Acts explicitly provide the P&A system with specific authority to pursue legal remedies on behalf of people with disabilities.

> The Acts also require that a P & A system have authority to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of" its charges. § 15043(a)(2)(A)(i); *see* § 10805(a)(1)(B). And

in addition to pressing its own rights, a P & A system may "pursue administrative, legal, and other remedies on behalf of" those it protects. § 10805(a)(1)(C); *see* § 15044(b).

*Virginia Office for Protection and Advocacy*, 563 U.S. at 251. The Supreme Court also held that the Virginia P&A enjoys authority to litigate claims free of oversight and to "initiate any proceedings to secure the rights" of individuals with disabilities. *Id.*

In *Indiana Protection and Advocacy Services Commission*, the court recognized that Congress has the ability to grant standing by saying so. 630 F. Supp. 3d 1022, 1030. "Congress gives [P&As] statutory standing to bring claims on behalf of its injured constituents. Constitutional standing requires only that those constituents in fact be injured; if injury is alleged, the suit may proceed." *Id.*[3]

The federal district courts within this Circuit have also held P&As have standing to pursue litigation on behalf of individuals with disabilities.

---

[3] Congressionally authorized representational standing is different than "statutory standing" as this Court defined that term in Am. *Psychiatric Ass'n v. Anthem Health Plans, Inc*. 821 F.3d 352 (2d Cir. 2016). As this Court recognized, the Supreme Court has made clear that "Statutory standing in fact is not a standing issue, but simply a question of whether the particular plaintiff "has a cause of action under the statute." *Id.* at 359 *citing Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Here, there is no dispute that the ADA, Section 504, and the Medicaid Act via § 1983 permit an individual right of action under the statute and that the P&A Acts direct that DRNY may bring those claims in its own right on behalf of people with disabilities who are injured.

In *Goldstein,* the court held that pursuant to the DD Act, the P&A need not show injury to the agency to initiate suit or intervene on behalf of an injured party. The live case or controversy requirement of Art. III is satisfied by injury to a person with a disability. *Goldstein*, 83 F.R.D. at 614–15, *citing Naughton v. Bevilacqua*, 458 F. Supp. 610, 616 (D.R.I. Sept. 18, 1978).

In *Rubenstein*, the court held that the P&A contractor had standing under the PAIMI Act to pursue a civil rights action against a private hospital and physician who initiated involuntary commitment proceedings. The court found that the statutory language of the PAIMI Act authorized the P&A contractor to pursue legal remedies for persons with mental illness even though the P&A contractor had not personally suffered an injury in fact. *Rubenstein* 790 F. Supp. at 408–409, *citing Goldstein*, 83 F.R.D. at 614.

In *Trautz v. Weisman*, 846 F. Supp. 1160 (S.D.N.Y. Mar. 16, 1994), two former residents brought a class action against the owners and operators of an adult home pursuant to the civil Racketeer Influenced Corrupt Organizations Act, several federal civil rights laws, and various state statutes for injunctive relief and money damages. Additionally, the P&A contractor asserted the same claims in its own name pursuant to 42 U.S.C. § 10805 (a)(1)(B), seeking injunctive relief to protect the rights of the then current and future residents of the adult home. *Id.* at 1162. Relying on *Rubenstein* and the plain language of the PAIMI Act, the court concluded that the

19

PAIMI Act conferred standing on the P&A contractor to seek injunctive relief on behalf of the adult home residents. *Id* at 1163. The court reasoned that had "Congress merely intended for [the P&A] to act as advocates on behalf of mentally individuals, (sic) it would not have included (a)(1)(B) in addition to (a)(1)(C)." *Id.* Notably, although the court refused to certify an injunctive relief Rule 23 class for issues unrelated to standing, the court noted that "should [the P&A] prevail in its suit for injunctive relief, the practical effect may be indistinguishable from that of a successful class action for injunctive relief." *Id.* at 1166, n.7.

DRNY has met the requirements of justiciability and controversy by alleging in a representative capacity a colorable claim of direct injury suffered by individuals with intellectual and developmental disabilities.

## IV.   JUDICIALLY IMPOSED LIMITATIONS DO NOT APPLY WHERE CONGRESS HAS AUTHORIZED STANDING

The judicially imposed general prohibition on a litigant's raising another person's legal rights is not a constitutional mandate. *Warth*, 422 U.S. at 501 ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules."); *See also Gladstone Realtors*, 441 U.S. at 103.

Instead, judicially imposed prohibitions are precisely the sort that Congress may abrogate. Because DRNY has been specifically authorized by Congress to bring

suit in its own name on behalf of people with disabilities, DRNY need not meet any additional judicially imposed limitations on standing. "When Congress has extended standing under a statute to the limits of Article III, 'the courts accordingly lack the authority to create prudential barriers to standing in suits brought under that [statute].'" *U.S. ex rel. Kreindler & Kreindler,* 985 F.2d at 1153 *citing Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

Pursuant to the P&A Acts, DRNY need only allege that the people Congress directed it to represent have suffered redressable injury as a result of Defendants' conduct.

## V. THE DISTRICT COURT'S RELIANCE ON CASES WHERE CONGRESS HAS NOT AUTHORIZED STANDING IS MISPLACED

The district court's reliance on *Spokeo, Inc. v. Robins*, for the proposition that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing" is misplaced. *Spokeo, Inc.*, 578 U.S. 330, 339 (2016), *quoting Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).

In *Spokeo, Inc.,* an individual asserted injury in fact on behalf of himself and a class of other aggrieved individuals, and in *Raines* members of Congress alleged injury to themselves caused by the Executive Branch. *Id.* Neither case addressed a situation as presented here, where Congress enacted legislation specifically to

empower an agency to bring lawsuits enforcing the rights of others. To be clear, DRNY is not arguing that Congress has *erased Article III standing requirements*, rather DRNY *satisfies* Article III's requirements within the P&A framework created by Congress.

The district court also wrongly relied upon *Disability Rights New York v. New York State et al.,* 2019 WL 2497907, (E.D.N.Y. June 14, 2019) for the reasons stated above.

## <u>CONCLUSION</u>

For all the above reasons, this Court should find that DRNY has representational standing and reverse the District Court's dismissal of its claims.

Dated: Brooklyn, New York

May 9, 2024

Respectfully submitted,

/s/ Jennifer J. Monthie

_____

Jennifer J. Monthie

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that the foregoing brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B). The typeface used was 14 Point Times New Roman. According to the word processing system used to prepare this brief, the number of words in this brief is 5039.

Dated:      Brooklyn, New York
            May  9, 2024

Respectfully submitted,

/s/ Jennifer J. Monthie

_____

Jennifer J. Monthie, Esq.
Julie Keegan, Esq.
Ben Taylor, Esq.
***Attorneys for Appellant***
276 Troy Road, Ste. 9
Rensselaer, New York 12144
(518) 432-7861